NUMBER 13-08-00313-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


STATEWIDE MOBILE HOMES, L.L.C.

AND MARK DIZDAR, INDIVIDUALLY, Appellants,


v.
 


TESORO INC., A TEXAS CORPORATION

D/B/A AAA CUSTOM & ELECTRICAL SIGNS, Appellee.

 




On appeal from the 370th District Court of Hidalgo County, Texas.


 




MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Garza


 This case involves a contractual dispute regarding a maintenance agreement for an
advertisement sign located in Donna, Texas. Appellee, Tesoro Inc., a Texas corporation
d/b/a AAA Custom & Electrical Signs ("Tesoro"), filed suit against appellants, Statewide
Mobile Homes, L.L.C. ("Statewide") and Mark Dizdar, individually, for failing to make
payments on the agreement. Statewide and Dizdar counterclaimed that Tesoro failed to
maintain and keep the sign in good repair in accordance with the agreement. After a jury
trial, judgment was rendered in favor of Tesoro. Statewide and Dizdar bring seven issues
on appeal. We affirm.

I. Background


 Tesoro filed suit against Statewide and Dizdar, alleging that Statewide and Dizdar
had breached a maintenance agreement by failing to make required monthly payments in
the amount of $660.33. Statewide and Dizdar filed a second amended answer and original
counterclaim to Tesoro's petition, asserting numerous affirmative defenses and a cause
of action for breach of contract. In their breach of contract action, Statewide and Dizdar
contended that they sustained damages due to Tesoro's failure to maintain the
advertisement sign and the area surrounding the sign. (1)

 The dispute was tried to a jury. After both sides rested, the jury returned a verdict
in favor of Tesoro, concluding that: (1) Tesoro complied with the maintenance agreement;
(2) Statewide and Dizdar failed to comply with the maintenance agreement; and (3)
Statewide and Dizdar's refusal to make payments preceded Tesoro's refusal to provide
services. The trial court signed a final judgment awarding Tesoro $122,720.46 in damages
and attorney's fees in the amount of $18,500 for work completed at the trial court level,
$15,000 for an appeal to this Court, and $7,500 for an appeal to the Texas Supreme Court. 
This appeal followed.


II. Alleged Jury Charge Error


 By their first and third issues, Statewide and Dizdar argue that the trial court abused
its discretion: (1) in awarding money damages when a question regarding money damages
was not contained in the jury charge; and (2) assessing liability against both Statewide and
Dizdar because the jury charge ambiguously referred to Statewide and Dizdar as one
collective party.

A. Applicable Law


 A breach of contract occurs when a party fails or refuses to do something he has
promised to do. Townewest Homeowners Ass'n, Inc. v. Warner Commc'n Inc., 826 S.W.2d
638, 640 (Tex. App.-Houston [14th Dist.] 1992, no writ). The court determines what
conduct is required by the parties, and, insofar as a dispute exists concerning the failure
of a party to perform the contract, the court submits the disputed fact questions to the jury. 
Meek v. Bishop, Peterson & Sharp, P.C., 919 S.W.2d 805, 808 (Tex. App.-Houston [14th
Dist.] 1996, writ denied).

B. Standard of Review


 Jury charge error is reviewed for an abuse of discretion. Shupe v. Lingafelter, 192
S.W.3d 577, 579 (Tex. 2006 ) (per curiam); Owens-Corning Fiberglas Corp. v. Martin, 942
S.W.2d 712, 721-22 (Tex. App.-Dallas 1997, no writ). To determine whether an alleged
jury charge error is reversible, we consider the parties' pleadings, the evidence presented
at trial, and the charge in its entirety. See Hyundai Motor Co. v. Rodriguez, 995 S.W.2d
661, 663 (Tex. 1999). The goal of a jury charge is to submit the issues for decision
logically, simply, clearly, fairly, correctly, and completely, and the trial court has broad
discretion in accomplishing that end as long as the charge is legally correct. Id. at 664. 
A trial court must submit "such instructions and definitions as shall be proper to enable the
jury to render a verdict." Tex. R. Civ. P. 277; see Union Pac. R.R. Co. v. Williams, 85
S.W.3d 162, 166 (Tex. 2002). A party is entitled to a jury question, instruction, or definition
if the pleadings and evidence raise an issue. Williams, 85 S.W.3d at 166 (citing Tex. R.
Civ. P. 278). This is a substantive, non-discretionary directive to trial courts, requiring them
to submit requested questions to the jury if the pleadings and any evidence support them. 
Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992).

C. Question on Damages

 

 On appeal, Statewide and Dizdar assert that Tesoro was not entitled to recover
damages because it failed to submit the question of damages to the jury and, thus, waived
the issue. Tesoro argues that the only issue to be resolved by the jury was whether
Statewide and Dizdar were excused from performing under the maintenance agreement
due to a prior breach of contract by Tesoro. Tesoro further argues that the amount of
damages was an undisputed issue of fact because it was clearly addressed in the
maintenance contract. We agree.

 The failure to request a jury question on an issue results in waiver of that issue by
the party relying on it unless the issue was conclusively established. See Tex. R. Civ. P.
279; Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 764 (Tex. App.-El Paso 2000,
no pet.). When facts are undisputed or conclusively established, there is no need to
submit those issues to the jury. Sullivan v. Barnett, 471 S.W.2d 39, 44 (Tex. 1971); see
XCO Prod. Co. v. Jamison, 194 S.W.3d 622, 633 (Tex. App.-Houston [14th Dist.] 2006,
pet. denied); Meek, 919 S.W.2d at 808.

 In the present case, the jury was asked: (1) whether Tesoro breached the
maintenance agreement; (2) whether Statewide and Dizdar breached the maintenance
agreement; and (3) whether Statewide and Dizdar failed to make payments on the
agreement before Tesoro refused to provide services. The jury subsequently concluded
that: (1) Tesoro did not breach the agreement; (2) Statewide and Dizdar did breach the
agreement; and (3) Statewide and Dizdar's failure to make payments under the agreement
preceded Tesoro's refusal to provide services. No question pertaining to the amount of
damages sustained was submitted to the jury because it was not in dispute. See Tex. R.
Civ. P. 278; see also Williams, 85 S.W.3d at 166. 

 The underlying maintenance agreement had a default and termination clause which
discussed the amount of damages to which Tesoro was entitled. The default and
termination clause provided the following, in pertinent part:

 

 Company [Tesoro] may terminate this agreement in any of the following
events: (1) Failure of Customer [Statewide and Dizdar] to pay any of the
monthly maintenance charges herein provided within ten (10) days of the
time herein provided . . . .

 

 The parties expressly agree and understand that Company, entering into this
Maintenance Agreement, has based its prices on the basis of the Agreement
remaining in effect for the full term of the agreement. In the event this
Agreement is terminated for any reason other than fault of Company,
including destruction or removal of display, Customer expressly agrees to
forthwith pay to Company 80% of all remaining maintenance payments as
liquidated damages and compensation to Company for its loss arising from
said agreement not having continued in effect for its full term.


(Emphasis added.)


 Because the maintenance agreement contemplated the amount of damages to
which Tesoro was entitled in the event of Statewide and Dizdar's breach, this issue was
not in dispute and, therefore, was not required to be submitted to the jury. See Tex. R. Civ.
P. 279; Abraxas Petroleum Corp., 20 S.W.3d at 764; see also Sullivan, 471 S.W.2d at 44;
XCO Prod. Co., 194 S.W.3d at 633; Meek, 919 S.W.2d at 808. We conclude that the trial
court did not err in awarding damages without submitting the question of damages to the
jury because submission of that issue was not necessary. See Tex. R. Civ. P. 278;
Williams, 85 S.W.3d at 166; see also Martin, 942 S.W.2d at 721-22. Accordingly, we
overrule Statewide and Dizdar's first issue. 

D. Alleged Ambiguous Party References in the Jury Charge


 Statewide and Dizdar also contend that the jury charge "incorrectly 'lumped' together
Appellants Statewide and Dizdar into a single submission, thereby resulting in an ambiguity
in the respective jury questions regarding which defendant was being held responsible." 
Tesoro argues that: (1) it was undisputed that Statewide and Dizdar were both
contractually obligated to perform under the agreement and failed to do so; and (2)
Statewide and Dizdar's failure to object to the jury charge waived any error.

 Statewide and Dizdar complain about the following language contained in the
second and third questions in the jury charge:

 QUESTION NO. 2

 Did Statewide/Mark Dizdar fail to comply with the Agreement?

 Answer "Yes" or "No":

 ANSWER: YES

 . . . .

 QUESTION NO. 3

 Which came first, Statewide/Mark Dizdar's failure to make payments
or Tesoro's refusal to provide services?

 

 ANSWER ("Statewide/Mark Dizdar" or "Tesoro"): Statewide/Mark Dizdar


 "[A]ny complaint to a jury charge is waived unless specifically included in an
objection." In re B.L.D., 113 S.W.3d 340, 349 (Tex. 2003) (citing Tex. R. Civ. P. 274; Tex.
R. App. P. 33.1(a)(1)). "A party must make the trial court aware of the complaint, timely and
plainly, and obtain a ruling." Id. (citing State Dep't of Highways & Pub. Transp. v. Payne,
838 S.W.2d 235, 241 (Tex. 1992)). Statewide and Dizdar did not object to the language
contained in the proposed jury charge when prompted to do so by the trial court at the
charge conference, nor did they submit a jury question in substantially correct wording that
would have apprised the trial court of the alleged error. We therefore conclude that
Statewide and Dizdar have waived their third issue. See Tex. R. Civ. P. 274; Tex. R. App.
P. 33.1(a)(1); see also In re B.L.D., 113 S.W.3d at 349. 

III. Statewide and Dizdar's Legal and Factual Sufficiency Arguments

 In their fourth and fifth issues, Statewide and Dizdar assert that the evidence
supporting the trial court's awards of interest and attorney's fees was legally and factually
insufficient. 

A. Standard of Review


 When conducting a legal sufficiency review, we view the evidence in the light most
favorable to the verdict to determine whether the evidence at trial would allow reasonable
and fair-minded people to reach the verdict under review. City of Keller v. Wilson, 168
S.W.3d 802, 827 (Tex. 2005). We "must credit favorable evidence if reasonable jurors
could, and disregard contrary evidence unless reasonable jurors could not." Id. We will
sustain a challenge to the legal sufficiency of evidence only if: (1) there is a complete
absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of a vital fact. Id. at 810. More than a scintilla of evidence exists,
and the evidence is legally sufficient, if the evidence furnishes some reasonable basis for
differing conclusions by reasonable minds about a vital fact's existence. Lee Lewis Constr.
Co. v. Harrison, 70 S.W.3d 778, 782-83 (Tex. 2001). However, "'when the evidence
offered to prove a vital fact is so weak as to do no more than create a mere surmise or
suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no
evidence.'" Ford Motor Co. v. Ridgeway, 135 S.W.3d 598, 601 (Tex. 2004) (quoting
Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)).

 In conducting a factual sufficiency review, we do not substitute our judgment for that
of the jury; rather, we view all the evidence in a neutral light to determine whether the
evidence is so weak or the finding is so contrary to the great weight and preponderance
of the evidence as to be manifestly unjust, shock the conscience, or clearly demonstrate
bias. City of Keller, 168 S.W.3d at 826; Golden Eagle Archery, Inc. v. Jackson, 116
S.W.3d 757, 761 (Tex. 2003); Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); 
Villagomez v. Rockwood Specialities, Inc., 210 S.W.3d 720, 749 (Tex. App.-Corpus Christi
2006, pet. denied).

B. Legal and Factual Sufficiency of the Damage Award


 A claimant in an action for breach of contract must show the existence of a contract
between the parties, that the contract created duties, that a breach of the duties occurred,
and that the claimant sustained damages. City of Corpus Christi v. Bayfront Assoc, Ltd.,
814 S.W.2d 98, 103 (Tex. App.-Corpus Christi 1991, writ denied); see also Solis v. Evins,
951 S.W.2d 44, 50 n.3 (Tex. App.-Corpus Christi 1997) (orig. proceeding). On appeal,
Statewide and Dizdar contend that the trial court's damage award was "inappropriate" and
"excessive." In particular, Statewide and Dizdar complain about the trial court's award of
"accrued interest" in the amount of $94,194.20; they do not contest the underlying damage
calculation or any other element of Tesoro's breach of contract cause of action. 

 In support of their argument, Statewide and Dizdar rely heavily on former article
5069-1.03 of the Texas Revised Civil Statutes. See Act of May 24, 1979, 66th Leg., R.S.,
ch. 707, § 1, 1979 Tex. Gen. Laws 1718, 1718, repealed by Act of May 10, 1999, 76th
Leg., R.S., ch. 62, § 7.18, 1999 Tex. Gen. Laws 222, 224 (current version at Tex. Fin.
Code Ann. § 302.002 (Vernon 2006)). (2) Former article 5969-1.03 provided that:

 When no specified rate of interest is agreed upon by the parties, interest at
the rate of six percent per annum shall be allowed on all accounts and
contracts ascertaining the sum payable, commencing on the thirtieth (30th)
day from and after the time when the sum is due and payable.


Id. Statewide and Dizdar therefore argue that Tesoro should have only received, at most,
six percent interest on the damages sustained. 

 Paul Sullivan, an employee of Tesoro, testified that Tesoro, Statewide, and Dizdar
entered into the maintenance agreement on January 27, 2000. He further testified that
Statewide and Dizdar: (1) routinely made late payments; (2) only made six of the sixty
expected payments; and (3) last paid on October 23, 2000. Sullivan also stated that
Statewide and Dizdar were required to pay $660.33 per month, and as a result of this non-payment, Tesoro suffered damages in the amount of $28,526.26 (80% of the remaining
fifty-four payments of $660.33 owed). Sullivan noted that Tesoro expended more than
$18,000 to repair the sign even after Statewide and Dizdar refused to make payments
under the agreement.

 Dizdar testified that he signed the agreement in his individual capacity and on behalf
of Statewide. (3) He further testified that the sign did not operate properly by the time
Statewide received its first bill. Specifically, Dizdar contended that blue neon lights in the
upper right-hand corner of the sign flickered and that the sign eventually developed a hole
and jagged cracks in its bottom portion. He admitted that Statewide refused to make
payments under the agreement in October 2000, when it discovered that Tesoro was not
fixing the sign to their satisfaction. He also admitted that Statewide occasionally made late
payments to Tesoro. 

 The agreement, which was admitted into evidence, provided the following with
respect to the "accrued interest" about which Statewide and Dizdar complain:

 MAINTENANCE FEE

 

 Customer agrees to pay Company [Tesoro], upon execution of this
agreement, an initial downpayment [sic] of $ 610.00 and thereafter a monthly
maintenance fee of $ 610.00 plus all applicable sales taxes for each and
every calendar month throughout the terms [sic] of this agreement. The
initial downpayment [sic] constitutes the monthly maintenance fee for the 1st
and months of the term of this agreement.


 In addition to the above maintenance fee, an amount equal to 18%
annual percentage rate charged at the rate of 1½% per month shall be due
and payable on all maintenance fees, taxes, or service charges remaining
unpaid on the 10th day of the month following the original due date of such
items. 


(Emphasis added.)


 Clearly, the agreement provided a basis upon which the trial court could have
awarded Tesoro interest at a rate of 18% on the untimely payments, which undermines
Statewide and Dizdar's argument that the parties did not agree on the applicable interest
rate. In viewing the evidence in the light most favorable to the judgment, we conclude that
the evidence presented at trial could allow reasonable and fair-minded people to determine
that: (1) Tesoro sustained $28,526.26 in damages; and (2) the agreement provided for
interest to be calculated at 1.5% per month or 18% annually, amounting to $94,194.20 in
interest. See Tex. Fin. Code Ann. § 304.002; see also City of Keller, 168 S.W.3d at 827. 
Furthermore, the evidence was not so weak or the opposing evidence so overwhelming
that the damage award was manifestly unjust. Accordingly, the evidence was legally and
factually sufficient to support the trial court's damage award. See id. at 826; Golden Eagle
Archery, Inc., 116 S.W.3d at 761; Pool, 715 S.W.2d at 635; Villagomez, 210 S.W.3d at
749. We overrule Statewide and Dizdar's fourth issue. C. Legal and Factual Sufficiency of the Award of Attorney's Fees


 Statewide and Dizdar further contend that the evidence is legally and factually
insufficient to support an award of attorney's fees. Reasonable attorney's fees are
recoverable in a suit for breach of contract. See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008). The determination of reasonable attorney's fees is a question
for the trier of fact. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 12 (Tex. 1991). The
amount of a fee award rests in the sound discretion of the trial court, and its judgment will
not be reversed on appeal absent a clear abuse of discretion. Alford v. Johnston, 224
S.W.3d 291, 298 (Tex. App.-El Paso 2005, pet. denied).

 Courts are to consider the following factors when determining the amount of
reasonable attorney's fees: (1) the time and labor required, novelty, and difficulty of the
question presented and the skill required to properly perform the legal service; (2) the
likelihood that the acceptance of employment precluded other employment by the lawyer;
(3) the fee customarily charged in the locality for similar services; (4) the amount involved
and the results obtained; (5) the time limitations imposed by the client or by the
circumstances; (6) the nature and length of the professional relationship with the client; (7)
the experience, reputation, and ability of the lawyer performing the services; and (8)
whether the fee is fixed or contingent. See Arthur Andersen & Co. v. Perry Equip. Corp.,
945 S.W.2d 812, 818 (Tex. 1997). When making this inquiry, courts are free to look at the
entire record, the evidence presented on reasonableness, the amount in controversy, the
common knowledge of the participants as lawyers and judges, and the relative success of
the parties. Garrod Invs., Inc. v. Schlegel, 139 S.W.3d 759, 767 (Tex. App.-Corpus Christi
2004, no pet.).

 In its motion for judgment, Tesoro requested attorney's fees and attached an
affidavit executed by its trial counsel, William D. Peisen, in support of its request. In his
affidavit, Peisen stated that he spent sixty hours in prosecuting this case and that his hourly
rate was $250 per hour, amounting to $15,000 in attorney's fees. (4) In addition, Peisen
noted that: (1) post-trial proceedings and discovery would require him to spend an
additional fifteen hours on the case at the same $250 hourly rate, constituting $3,750 in
additional fees; (2) reasonable attorney's fees for an appeal to this Court would be
$15,000; and (3) reasonable attorney's fees for an appeal to the Texas Supreme Court
would be $7,500. Statewide and Dizdar filed a joint objection to Tesoro's motion for
judgment, contending, among other things, that Tesoro's request for attorney's fees was
unreasonable and excessive; however, they did not present any evidence controverting
Peisen's affidavit. 

 Based upon the record before us, we conclude that the trial court's award of
attorney's fees is supported by legally and factually sufficient evidence. Accordingly, we
overrule Statewide and Dizdar's fifth issue. 

IV. Challenge to Basis For Awarding Attorney's Fees And Interest


 In their sixth issue, Statewide and Dizdar argue that the trial court abused its
discretion in awarding attorney's fees because the jury did not award Tesoro damages on
its breach of contract claim. In their seventh issue, Statewide and Dizdar contend that the
trial court further abused its discretion in awarding interest of 18% per annum, a rate higher
than allowed by law.

A. Attorney's Fees and Damages

 

 1. Standard of Review 


 An award of attorney's fees is reviewed under an abuse of discretion standard. Dail
v. Couch, 99 S.W.3d 390, 391 (Tex. App.-Corpus Christi 2003, no pet.). The test for
abuse of discretion is to determine whether the trial court acted without reference to any
guiding rules or principles, or whether, under the circumstances of the case, the trial court's
actions were arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241-42 (Tex. 1985).

 

 2. Discussion


 Section 38.001(8) of the civil practice and remedies code permits an award of
attorney's fees for a suit based on a written contract. See Tex. Civ. Prac. & Rem. Code
Ann. § 38.001(8). However, "[t]o recover attorney's fees under [section] 38.001, a party
must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2)
recover damages . . . ." Green Int'l v. Solis, 951 S.W.2d 384, 390 (Tex. 1997). 

 It is undisputed that Tesoro was the prevailing party in this matter. Moreover, the
trial court, in its final judgment, awarded Tesoro, among other things, $122,720.46 in
damages. Because the jury concluded that Tesoro was the prevailing party in this matter
and the trial court awarded Tesoro damages, the trial court did not abuse its discretion in
awarding Tesoro reasonable attorney's fees pursuant to section 38.001(8) of the civil
practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8); see also
Solis, 951 S.W.2d at 390. Accordingly, we overrule Statewide and Dizdar's sixth issue.

B. Post-Judgment Interest 

 As previously mentioned, the finance code provides for post-judgment interest at a
rate equal to the lesser of the rate specified in the contract or 18% per year. See Tex. Fin.
Code Ann. § 304.002. Furthermore, "when a note specifies a rate of interest before
maturity, but is silent about any rate after maturity, the law implies that the pre-maturity rate
continues after maturity." Petroscience Corp. v. Diamond Geophysical, Inc., 684 S.W.2d
668, 668 (Tex. 1984) (per curiam). In the instant case, the trial court stated, in the final
judgment, that interest shall accrue "at the rate of one and one-half percent per month until
paid" or 18% per year. This finding coincides with the interest rate provided by the
agreement and does not exceed the limits stated in section 304.002 of the finance code. 
See Tex. Fin. Code Ann. § 304.002. Because the trial court's post-judgment interest award
does not violate the finance code, we conclude that the trial court did not abuse its
discretion. See id. Accordingly, we overrule Statewide and Dizdar's seventh issue.

IV. Conclusion


 Having overruled all of Statewide and Dizdar's issues on appeal, we affirm the
judgment of the trial court. (5)

 

 ________________________

 DORI CONTRERAS GARZA,

 Justice

 

Memorandum Opinion delivered and 

filed this the 13th day of August, 2009.

1. Specifically, Statewide and Dizdar alleged that Tesoro: "failed to maintain the appearance of the
sign by way of yard work around the sign, failed in the clearing of debree [sic] from beneath and around the
sign and generally failed in maintaining the appearance of the sign." At trial, Dizdar alleged that the sign had
several blue neon bulbs that were broken, a hole, and several cracks, which Tesoro did not repair.
2. Under the finance code, "[a] money judgment of a court of this state on a contract that provides for
interest or time price differential earns post[-]judgment interest at a rate equal to the lesser of . . . the rate
specified in the contract . . . or . . . 18 percent per year." Tex. Fin. Code Ann. § 304.002 (Vernon 2006). 
3. In fact, Dizdar stated that he, as a partner of Statewide, personally guaranteed the agreement in the
event that Statewide would not or could not make the payments.
4. Peisen averred that the range of reasonable hourly rates for an attorney of his experience in this
locality was $250 to $350 per hour.
5. We need not review Statewide and Dizdar's second issue on appeal because Statewide and Dizdar
informed this Court via a letter filed on March 12, 2009, that they intended to abandon the issue on appeal. 
See Tex. R. App. P. 47.1.