752 F.2d 1110
 Archie ARMSTRONG, Plaintiff-Appellee,
v.
The KANSAS CITY SOUTHERN RAILWAY COMPANY, Defendant,
and
LOUISIANA & ARKANSAS RAILWAY COMPANY, Defendant-Appellant,
v.
MILLER CAB COMPANY, INC., and New Hampshire Insurance
Company, Third Party Defendants-Appellees.
 No. 84-3344
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 15, 1985.
 Milling, Benson, Woodward, Hillyer, Pierson & Miller, Louis Simon, II, New Orleans, La., for defendant-appellant.
 Herman L. Bastian, Jr., New Orleans, La., for Miller Cab and New Hampshire Ins.
 Butler & Heebe, Aubrey B. Hirsch, Jr., New Orleans, La., for Armstrong.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WILLIAMS, JOLLY, and HILL, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 The Louisiana & Arkansas Railway Co. (L & A) appeals from a jury verdict holding it liable under Sec. 1 of the Federal Employers' Liability Act (the Act or FELA)[1] for injuries incurred by one of its brakemen in an automobile accident. L & A challenges the sufficiency of the evidence to support the jury verdict. In addition, L & A appeals from the district court's dismissal of its third party indemnity action against Miller Cab Company (Miller).[2] L & A contends that the jury's implicit finding of negligence on the part of Miller in the FELA action entitles L & A to indemnity under Louisiana law. For the reasons that follow, we affirm the judgment of the district court.
 
 I. Case History
 
 2
 Armstrong brought this action against Kansas City Southern Railway Company (KCS) and L & A, under the Act, for injuries he sustained in an automobile accident during the course of his employment with L & A as a brakeman.[3] KCS and L & A filed a third-party complaint against Miller and its insurer, New Hampshire Insurance Company, seeking indemnity should judgment in Armstrong's action be rendered against them. After the jury rendered a verdict in favor of Armstrong and against KCS and L & A, the third-party indemnity claim, which was tried concomitantly by the district court, was dismissed.
 
 
 3
 The testimony and exhibits established the following facts. On the evening of September 22, 1978, Armstrong was travelling as a brakeman on a freight run from New Orleans to Alexandria, Louisiana. The freight train approached Alexandria during the early hours of September 23, in the vicinity of Willow Glen River Road. Armstrong, pursuant to orders from L & A, disembarked from the train to assist in placing a cut of cars on a side track and to allow another crew to board and complete the train's journey to Shreveport. In accordance with its custom, L & A summoned a taxicab, owned and operated by Miller, to the railroad crossing at Willow Glen River Road to transport Armstrong and his co-worker Murphy Batiste to the railroad's yard office.
 
 
 4
 When the crossing was clear the cab pulled up to and stopped on the eastbound lane of Willow Glen River Road about five feet from the track. The cab driver might have parked in a nearby parking lot; he might also have parked on the shoulder of the road. There is some dispute, however, as to the width of the shoulder along Willow Glen River Road. The elevation of the railroad crossing was approximately a foot and a half to two feet; nevertheless, the cab driver made no attempt to turn on his emergency flashing lights or take any action to assure the cab's visibility to other motorists.[4] Because the train was still in the area, the railroad signal flashers on both sides of the track were burning brightly and the bells appended thereto were ringing loudly. As Armstrong entered the cab and before he closed the door or put on his seat belt, an eastbound motorist struck the cab from the rear. The cab then rolled forward approximately thirty yards. As a result of this collision the driver of the eastbound vehicle died and Armstrong suffered neck injuries.
 
 
 5
 Upon the district court's entry of judgment in favor of Armstrong, the railroads moved for judgment notwithstanding the verdict or alternatively for a new trial. The railroads also filed a motion to delete KCS from the judgment as the parties had agreed that L & A was the proper party. After a hearing, the district court denied the motion for judgment notwithstanding the verdict and/or new trial and granted the motion to delete KCS from the judgment. L & A then duly perfected this appeal.
 
 II. Sufficiency of Evidence
 
 6
 The jury found that the driver of the cab owned by Miller was negligent and that such negligence was a legal cause of damage to Armstrong. L & A contends, however, that the evidence was insufficient to justify a jury verdict of negligence in Armstrong's favor. More specifically, L & A asserts that the driver of the cab could not have reasonably foreseen that another motorist would strike the cab from the rear. As we believe sufficient evidence supports the jury verdict, we decline to hold that the district court's denial of L & A's motion for judgment notwithstanding the verdict constitutes reversible error.
 
 
 7
 The Act allows recovery of damages for personal injuries to an employee of a railroad if the injuries resulted "in whole or in part from the negligence of any of the officers, agents, or employees of such carrier." 45 U.S.C. Sec. 51. Under the Act, a railroad will be liable if its negligence or its agent's negligence played any part, even the slightest, in producing the employee's injury. Richardson v. Missouri Pacific Railroad Co., 677 F.2d 663, 665 (8th Cir.1982) (citing Rogers v. Missouri Pacific R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957)). "Since the act explicitly makes an employer liable if an injury results only in part from his negligence, the common-law proximate cause standard is modified, and the employee has a less demanding burden of proving causal relationship." Nivens v. St. Louis Southwestern Railway Co., 425 F.2d 114, 118 (5th Cir.1970). Nevertheless, we note that L & A is correct in asserting that Armstrong's prima facie case under the Act must include all the same elements as are found in a common law negligence action. Specifically, he still has the burden of proving that the "employer, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury; foreseeability is 'an essential ingredient' of negligence under the Act." Id. (quoting Gallick v. Baltimore & Ohio Railroad Co., 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1963)).
 
 
 8
 Addressing the function of this Court in reviewing a jury finding of negligence under the Act, the Supreme Court has stated:
 
 
 9
 Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when the evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable.
 
 
 10
 Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), quoted in Lang v. Texas & Pacific Railway Co., 624 F.2d 1275, 1278 (5th Cir.1980).
 
 
 11
 In the instant case, there exists a sufficient evidentiary basis for the jury to infer negligence on the part of the cab driver. It was dark; nevertheless, the cab driver stopped on Willow Glen River Road in the eastbound lane approximately four or five feet from the elevated railroad crossing and failed to turn on his emergency flashing lights. Further, the cab driver could have parked on the adjacent shoulder of the road or in a nearby parking lot. From this evidence, it was reasonable for the jury to infer negligence; more specifically, this evidence sufficiently supports the inference that the cab driver, with the exercise of due care, could have reasonably foreseen that parking his cab in such a position and manner at that time in the morning could result in a rear-end accident.
 
 
 12
 The testimony of Murphy Batiste, the passenger in the cab, does cast some doubt on the evidence supporting the jury's conclusion. Batiste testified that the shoulder of the road was too narrow for the cab to safely pull off the road; he also testified that the crossing was not elevated thus establishing uninhibited vision on the part of oncoming motorists. The jury was free, however, to give more credence to Armstrong's testimony than to Batiste's and to infer that the cab driver was negligent in stopping the cab at that time and location and in that manner. Similarly, evidence tending to establish the negligence of the motorist who ran into the rear of the cab does not preclude the jury's finding that the cab driver's negligence played at least some part in Armstrong's injuries. Because there is not a complete absence of probative facts to support the finding of negligence, we reject Armstrong's contention that there was insufficient evidence to support the jury verdict.[5]
 
 III. Indemnity
 
 13
 L & A next contends that the district court erred in finding that L & A is not entitled to indemnity under Louisiana law in its third-party action against Miller and its insurer. In considering L & A's indemnity action against Miller and its insurer, the district court stated it was not bound by the fact finding of the jury as to the negligence of the cab driver. The court, after making credibility choices, found that the cab driver was not negligent. The court went on to state that even if he had been found negligent, the cab driver's negligence must have been a "substantial producing cause to the accident" under Louisiana law in order for L & A to prevail on its third-party indemnity claim. The district court then found that the cab driver's assumed negligence was not a substantial producing cause of the accident and that the sole cause of the accident was the negligence of the motorist who ran into the rear of Miller's taxi cab.
 
 
 14
 While L & A's negligence under the Act is determined as a matter of federal law interpreting and implementing the Act,[6] L & A's right to indemnity is determined by state law. Fort Worth & Denver Railway Co. v. Threadgill, 228 F.2d 307, 312 (5th Cir.1955); Brenham v. Southern Pacific Co., 328 F.Supp. 119, 123 (W.D.La.1971), aff'd, 469 F.2d 1095 (5th Cir.1972). To succeed in his FELA action against L & A, Armstrong was required to show that Miller's cab driver was negligent in the manner and place in which he stopped his cab and that such negligence played some part, however slight, in producing Armstrong's injury. See Rogers, 352 U.S. at 506, 77 S.Ct. at 448. To succeed in its third party indemnity action against Miller, however, L & A was required to show under Louisiana law that Miller's fault or negligence was the proximate cause of Armstrong's injury. See Dupree v. Pechinay Saint Gobain Co., 369 So.2d 1075, 1081-82 (La.App.), cert. denied, 371 So.2d 1341 (La.1979) (citing Appalachian Corp. v. Brooklyn Cooperage Co., 151 La. 41, 91 So. 539, 541 (1922)).[7] Consequently, even though the jury found that L & A was liable to Armstrong because of the negligent conduct of its agent, the district court was neither constrained nor required to find that the negligence of Miller's agent proximately caused Armstrong's injury. The court did not so find.
 
 
 15
 L & A asserts that even though it is without fault, it is nevertheless statutorily required under FELA to pay for the acts or omissions of Miller. It argues that because the jury found Miller negligent in Armstrong's FELA action, L & A is entitled to indemnification for the damages it was required to pay as the result of Miller's negligence. This argument ignores the different causation standards of these two actions: the FELA action is governed by federal law while the indemnity action is governed by state law. In Nivens v. St. Louis Southwestern Railway Co., 425 F.2d 114 (5th Cir.1970), we stated:
 
 
 16
 The standards of liability for negligence under Sec. 1 of the Act are significantly broader than in ordinary common-law negligence actions. The Supreme Court has succinctly stated the now settled principle that in these cases,
 
 
 17
 "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury * * *. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes * * *. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit." Rogers v. Missouri Pac. Ry., 352 U.S. 500, 506-508, 77 S.Ct. 443, 449, 1 L.Ed.2d 493 (1957).
 
 
 18
 Since the Act explicitly makes an employer liable if an injury results only in part from his negligence, the common-law proximate cause standard is modified, and the employee has a less demanding burden of proving causal relationship.
 
 
 19
 Id. at 118.
 
 
 20
 The district court found that even if the cab driver was negligent, his negligence was not the proximate cause of Armstrong's injuries; rather, the court determined the sole cause of the accident was the negligence of the motorist who rearended the taxi cab. The district court's finding is reviewed on appeal under the clearly erroneous standard. A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Wild v. Lykes Brothers Steamship Corp., 734 F.2d 1124, 1125-26 (5th Cir.1984).
 
 
 21
 The record adequately supports the district court's finding. Batiste, Armstrong's co-worker, testified that there was insufficient room on the shoulder of the road to allow the taxi cab to completely pull off the road and that the railroad crossing was not elevated. He also testified that there were no cars in the area and no cars in the lane opposite to the taxi cab, that the night was clear and that an oncoming motorist would have been able to see the flashing lights on the track as well as the parking lights of the stopped taxi cab.[8] While the testimony of Armstrong to a certain extent contradicts Batiste's testimony, an appellate court is in a particularly poor position to second guess the district court's credibility choices among differing pieces of testimony. Ayers v. United States, 750 F.2d 449 at 456 (5th Cir.1985). Because we believe that there was sufficient evidence to support the district court's finding that the cab driver's negligence did not proximately cause Armstrong's injury, we decline to hold that the district court erred in dismissing L & A's indemnity action against Miller. The district court's denial of L & A's motion for judgment notwithstanding the verdict was proper.
 
 
 22
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This FELA suit is grounded solely upon the negligence provisions of Sec. 1 of the Act, 45 U.S.C. Sec. 51, which provide in pertinent part that a common carrier by railroad shall be liable for
 "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track roadbed ... or other equipment."
 
 
 [2]
 The parties do not dispute that Miller, the third party defendant that was transporting Armstrong at the time of the accident, was L & A's agent for the purposes of the Act
 
 
 [3]
 KCS is the parent corporation of L & A
 
 
 [4]
 This applies particularly to eastbound motorists whose vision may have been obscured by the elevated railroad crossing. There is also a factual dispute concerning the degree of elevation, if any, of the railroad crossing
 
 
 [5]
 Lavender v. Kurn, supra. Armstrong's reliance on Richardson v. Missouri Pacific Railroad Co., 677 F.2d 663 (8th Cir.1982), is misplaced. In Richardson, the plaintiff alleged negligence on the part of the railroad's agent, an automobile driver, for failure to avoid an accident. The accident occurred when a second driver ran a red light; further, the impact was almost simultaneous with a passenger's warning. The Richardson court found that Richardson had failed to adduce any evidence of any probative facts to support a finding that the railroad's agent could have foreseen such an accident or that the agent could have avoided the accident. Armstrong, however, brought forth sufficient evidence for the jury to conclude that the cab driver was negligent in failing to pull the cab off the road, to park it a safe distance from the crossing and to warn of the car's position in the eastbound lane. The evidence also establishes that such negligence played some part in his injury. Accordingly, we find Richardson factually distinguishable
 
 
 [6]
 See Cazad v. Chesapeake & Ohio Railway Co., 622 F.2d 72, 75 (4th Cir.1980); Kennedy v. Pennsylvania Railroad Co., 282 F.2d 705 (3d Cir.1960)
 
 
 [7]
 In Appalachian Corp., supra, the Louisiana Supreme Court stated:
 [W]here ... the actual fault of the proximate cause of injury is attributable to one of the parties and the other is only technically or constructively at fault, from failure or omission to perform some legal duty ..., indemnity may be had against the one primarily responsible for the act which caused the damage.
 Id. (emphasis added). See also Carter v. Epsco Industries, Inc., 511 F.Supp. 99, 102 (M.D.La.1980), reversed on other grounds, 681 F.2d 1062 (1982).
 
 
 [8]
 In Rowe v. Travelers Insurance Co., 219 So.2d 486, 489 (La.1969), under facts similar to these, the Louisiana Supreme Court stated:
 Coe [the rearending motorist,] obviously was negligent in failing to observe the lighted, parked vehicle until he was 30 feet or less from its rear. He should have observed the lighted car under the circumstances at a considerable distance, in time to move sufficiently to his left on the unobstructed portion of the highway and avoid the collision. Although Mrs. Rowe did not remove her vehicle entirely off the highway, Coe has failed to establish that this constituted negligence which was a proximate or contributing cause of the accident. The sole and proximate cause of this collision was the failure of Coe to observe what he could and should have observed....